UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

RICK PINEDA and GERARD PADDEN, individually
and on behalf of all others similarly situated,

Plaintiff,

-against-

APPLE INC., and AT&T MOBILITY, L.L.C.

Defendants.

------------------------------------------------------------------x

**FILED**
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y

★  JAN 1 3 2010  ★

BROOKLYN OFFICE

CASE NUMBER:

**CV10- 0128**

**CLASS ACTION COMPLAINT
AND JURY DEMAND**

**BLOCK, J.**

**MANN. M.J.**

Plaintiffs, RICK PINEDA and GERARD PADDEN, by and through their undersigned

attorneys, **DOUGLAS & LONDON, P.C.** bring this action on their own behalf and on behalf of

a Class of persons defined below against Defendants, APPLE INC., and AT&T MOBILITY,

L.L.C., (hereinafter referred to as "Defendants"), and for their complaint allege, upon

information and belief and based on the investigation to date of his counsel, as follows:

### JURISDICTION

1.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because

the amount in controversy as to the Plaintiffs and each member of the Plaintiff Class exceeds

$75,000.00, exclusive of interest and costs, and because Defendants are incorporated in and have

their principal places of business in states or countries other than the state in which the named

individual and representative Plaintiffs resides.

2.      This Court had further jurisdiction over this action pursuant to the Class Action

Fairness Act, because at least one member of the class is a citizen of a different state than the

Defendants and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of

interest and costs.

Defendants and the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest and costs.

## NATURE OF THE CASE

3.      This class action is brought on behalf of all persons residing in the state of New York who purchased 3G and 3G-S iPhones from July 1, 2008 and thereafter.

4.      Defendant, APPLE, INC. ("APPLE") designed, researched, manufactured, tested, advertised, promoted, marketed and/or sold iPhones to the public, including the 3G and 3G-S iPhones which are the subject of this lawsuit.

5.      Defendant AT&T MOBILITY, L.L.C., ("AT&T") is a cellular phone network which works exclusively with APPLE to provide cellular telephone service to all iPhones, including the 3G and 3G-S iPhones which are the subject of this lawsuit.

6.      Both Defendants AT&T and APPLE sold the iPhone in their respective stores, including the 3G and 3G-S iPhones which are the subject of this lawsuit.

7.      Defendants AT&T and APPLE marketed, advertised and sold 3G and/or 3G-S iPhones with the representation that these devices would make available "Multimedia Messaging Service", or "MMS" which, among other things, allows users to send a picture to another user's phone.

8.      As a result of the aforementioned representations made by Defendants AT&T and APPLE, Plaintiffs and the Plaintiff Class members purchased 3G and/or 3G-S iPhones.

9.      The aforementioned promises made by Defendants AT&T and APPLE were false, misleading and deceptive and, as a result, Plaintiffs and the Plaintiff class members suffered damages.

10.     Consequently, Plaintiffs and all Plaintiff Class members seek damages as a result

2

of their purchase of 3G and/or 3G-S iPhones.

## PARTY PLAINTIFFS

11.    Plaintiff, RICK PINEDA, is a resident of the United States of America, State of New York, County of Queens.

12.    Plaintiff, RICK PINEDA, purchased an iPhone 3-G from APPLE on December 16, 2008.

13.    Plaintiff, RICK PINEDA, purchased the iPhone primarily for personal, family, or household purposes.

14.    Plaintiff, RICK PINEDA, was unable to send and/or receive MMS messages on his iPhone in December 2008 and thereafter because the iPhone did not have MMS functionalities and/or capabilities as marketed, promoted and/or advertised by APPLE and AT&T.

15.    Plaintiff, GERARD PADDEN, is a resident of the United States of America, State of New York, County of Kings.

16.    Plaintiff, GERARD PADDEN, purchased an iPhone 3-G from APPLE in November 2008.

17.    Plaintiff, GERARD PADDEN, purchased the iPhone primarily for personal, family, or household purposes.

18.    Plaintiff, GERARD PADDEN, was unable to send and/or receive MMS messages on his iPhone in November 2008 and thereafter because the iPhone did not have MMS functionalities and/or capabilities as marketed, promoted and/or advertised by APPLE and AT&T.

3

## PARTY DEFENDANTS

19.     Defendant APPLE is a California corporation with its principal place of business in Cupertino, California.

20.     Upon information and belief, Defendant, APPLE has transacted and conducted business in the State of New York.

21.     Upon information and belief, Defendant, APPLE, has derived substantial revenue from goods and products used or in the State of New York.

22.     Upon information and belief, Defendant, APPLE, expected or should have expected its acts to have consequences within the State of New York, and derived substantial revenue from interstate commerce within the United States, and New York in particular.

23.     Defendant AT&T is a Delaware limited liability corporation with its principal place of business in Atlanta, Georgia.

24.     Upon information and belief, Defendant, AT&T has transacted and conducted business in the State of New York.

25.     Upon information and belief, Defendant, AT&T, has derived substantial revenue from goods and products used or in the State of New York.

26.     Upon information and belief, Defendant, AT&T, expected or should have expected its acts to have consequences within the State of New York, and derived substantial revenue from interstate commerce within the United States, and New York in particular.

## FACTS

27.     The iPhone was launched in January 2007 by Defendant APPLE. The iPhone was created, designed and/or manufactured by Defendant APLLE. The iPhone is a combination of an iPod (a device which stores thousands of music files and plays them back for the listener) and a

4

cellular phone (which allows users to talk with one another on the telephone while mobile) with an incredible amount of creative functionality.

28.     The cellular phone portion of the iPhone works exclusively with the ATT&T cellular phone network. Defendants APPLE and AT&T launched the iPhone as a joint venture. Both Defendants AT&T and APPLE sold the iPhone in their respective stores.

29.     The original version of the iPhone was called the "2G". The next generation, launched in July 2008, was called the "3G." The most recent version, launched in June 2009, is called the "3G-S."

30.     Since its creation, one flaw of the original 2G iPhone was that it did not allow "Multimedia Messaging Service", or "MMS" which, among other things, allows users to send a picture to another user's phone.

31.     Apple advertised heavily that the new version of iPhone, the 3G, as well as the even newer version, the 3G-S, would allow MMS.  Apple's print and video advertisements in and on television, the Internet, the radio, newspapers, and direct mailers all touted the availability of MMS.

32.     Similarly, AT&T advertised that the 3G and 3G-S would allow MMS. MMS functionality was one of the reasons people chose to buy or upgrade to a 3G or 3G-S.

33.     MMS has been available on other types of cell phones for many years.

34.     The following is an excerpt from APPLE's website:

**Send MMS**

*Take a photo or shoot some video, then send it via Messages.  You can also send audio recordings from within Messages, information form Contacts, and directions from Maps.*

5

35.   A Pop-Up window on APPLE's website reads:

**Sending Photos and Videos**

*You can take a photo or make a video (iPhone 3GS only) from within Messages and include it in your conversation with another MMS-capable device.*

36.   The following is an excerpt from AT&T's website:

**Messages**

*Use messages to send text, photos, audio, video, and more.   Forward a whole message or just the important parts.*

37.   After the 3G iPhone came out in July 2008, customers who purchased the 3G iPhone began to realize that MMS was not available.

38.   In response, AT&T published the following on the AT&T Answer Center page of its website for problems related to MMS:

*Customers who are sent a MMS message and own a non-MMS capable device will receive a message instead of an actual MMS message.   The message will contain the website address of www.viewmymessage.com/1 or www.viewmymessage.com/2 as well as a user name and password.   To view the MMS message, please access the website from a computer and enter the user name and password provided in the text message.*

39.   Incredibly, AT&T was directing customers interested in MMS to go to a computer to view the message.

40.   The AT&T Answer Center has this unhelpful solution to the problem.

*Send, Receive, or Delete a Picture, Audio, or Video Multi-Media Message (MMS) with iPhone":*

**Goal:** *Send, Receive, or Delete a Picture, Audio or Video Multi-media Message with iPhone.*

**Symptom:** *Unable to Send, Receive, or Delete a Picture, Audio or Video Multimedia Message with iPhone.*

6

*Fiix: iPhone does not support sending, or receiving picture, audio, or video multimedia messages. If an MMS is sent to the iPhone, it will receive a text message instead that contains a link to a website address where the message can be viewed.*

41.     The "Fix" was essentially to say "tough luck."

42.     In early 2009, sales representatives for both APPLE and AT&T began assuring customers that MMS would be available on both the 3G and the 3G-S beginning on June 17, 2009, when the new iPhone OS 3.0 Software Update would become available.  Representatives in APPLE and AT&T stores assured customers that with this new application, which could be downloaded for free, MMS would be available.

43.     In the spring of 2009, AT&T began a huge sales drive to sell its older 3G models in preparation for the launch of the 3G-S.   AT&T lowered the price of the 3G to less than $100.00 and assured customers that the new 3.0 Software Upgrade would solve all their problems.  Apple posted on its website, on the "iPhone OS 3.0 Software Update" page, that MMS would be available, so that customers could "send MMS messages and include photos, audio, and contact information. Even tap to snap a picture right inside messages."  A graphic showed the familiar iPhone test message bubbles with a picture inserted.

44.     Millions of customers, including New York residents, purchased the 3G and 3G-S, waiting for the day in June 2009 when the new application would be available which would allow MMS.  Unfortunately, after downloading the new 3.0 Software Update application, MMS still did not work on both the 3G and 3G-S.

45.     The APPLE troubleshooting page explained the problem:

*To send and receive MMS messages on your iPhone 3G, do the following:*

1.     *Verify that your iPhone and wireless carrier meet the system requirements.  To use MMS you need:*

--     *iPhone OS 3.0 installed on iPhone 3G.  The original iPhone does*

7

> *not support sending or receiving MMS messages.  Install iPhone OS 3.0 if necessary.*
> -- *A wireless carrier that supports MMS*
> -- *A coverage area in which you can place and receive a call, and access the Internet using Safari on your iPhone (3G network coverage recommended).*
>
> 2.   *If **this article** shows that your carrier supports MMS, you should see MMS Messaging in the Settings>Messages>General screen as shown below.*

46.   The "this article" phrase was a blue-colored hyperlink.  Clicking on that hyperlink leads to a page showing several countries.  Clicking on North America, and viewing the graph for USA, under the heading "AT&T," reveals that AT&T is NOT a carrier which offers MMS! Of course, AT&T is the ONLY carrier in the United States used by the iPhone.  In other words, ATT&T towers do not support MMS.

47.   Calling Apple Customer Support reveals that AT&T has never upgraded its towers so as to support the functionality necessary for MMS.  Therefore, the iPhone cannot offer MMS as claimed.

48.   The only excuse offered by AT&T and APPLE is a mouseprint disclaimer on the website, in barely readable font, which reads *"MMS Support for AT&T coming in late summer."*

49.   None of the representatives in either the Apple or AT&T stores advise consumers that the MMS functionality of the phones will only work after the AT&T towers are upgraded to support MMS in "late summer."

50.   When and if AT&T finally upgrades its towers, the millions of iPhone purchasers will get what they bargained for in terms of MMS.  But in the meantime, all the millions of purchasers of the iPhone have been deceived and cheated out of what they thought they were purchasing a phone with MMS functionality.

51.   APPLE and AT&T representatives continue to misrepresent and/or conceal,

8

suppress, or omit material facts to customers in their stores about the MMS functionality of the iPhones.

## CLASS ALLEGATIONS

52.     Plaintiffs RICK PINEDA and GERARD PADDEN bring this action as a class action pursuant to the provisions of the Federal Rules of Civil Procedure Rule 23 on behalf of themselves, individually, and a Class of persons similarly situated. This action satisfies the numerosity, commonality, typicality, adequacy, predominance and superiority requirements of those provisions.

53.     The Plaintiff class is defined as follows:

    a.     **All persons residing in New York who purchased a 3G and/or 3G-S iPhone from either AT&T Mobility L.L.C. or Apple, Inc. for personal, family or household use between July 1, 2008 and the date of final judgment or settlement.**

    b.     Collectively, all of these persons shall be referred to as "Plaintiffs" or the "Plaintiff Class" or "Plaintiff Class members".

54.     Excluded from the Plaintiff Class are the Defendants herein, any entity in which the Defendants have a controlling interest, and officers, directors and/or employees of the Defendants, and the legal representatives, heirs, successors, and assignees of the Defendants, and/or its officers, directors, and/or employees.

55.     The Class is so numerous that the individual joinder of all its members, in this or any action, is impractical. The exact number and identification of Class members are presently unknown to Plaintiff. Published news reports state that more than a million customers purchased the 3G iPhone the day it became available.  Many of those customers are located in New York. It is estimated that the Class will be composed of at least 10,000 individuals.  Plaintiffs will be

9

claiming damages for the iPhone they purchased.   An iPhone was and/or is selling from anywhere between $100 and $500.  Additionally, no attorney would have the financial resources to litigate this case against opposition from the Defendants when the potential for recovery is so small for each class member.  Therefore, joinder of all similarly-situated plaintiffs is appropriate. Class members may be informed of the pendency of this class action by direct mail, internet, or other means.

56.     Upon information and belief, Defendants herein have kept detailed records as to the purchasers of all 3G or 3G-S iPhones, including the time period of July 1, 2008 and thereafter.

57.     Common questions of fact and law exist as to all members of the Class, which predominate over any questions affecting only individual members of the Class, including, *inter alia*, whether Defendants engaged in deceptions and concealments in making claims that MMS was available on the 3G and 3G-S.   These common legal and factual questions, which do not vary from Class member to Class member, include, but are not limited to, the following:

**Fact Questions:**

a.     Did the Defendants know that AT&T has not upgraded its towers to support MMS, and, if so, when did they gain this knowledge;

b.     Did the Defendants know that most customers viewed MMS as an important functionality;

c.     Did the Defendants conceal from consumers that: (1) AT&T had not upgraded its towers to support MMS and had no plans to do so for many months; and  2) the 3.0 Software Upgrade would not fix the problem and make MMS available (by itself);

d.     Were Defendants aware of alternative methods of disclosure which would have more adequately warned customers of the unavailability of MMS and the reason for the non-availability of MMS;

e.     Did the Defendants market and advertise their iPhones as supporting

10

MMS with no mention, or little mention, of the fact that AT&T towers were not equipped to  support MMS;

f.      Do the salespersons at APPLE AT&T have any scripts or training materials which would provide them with knowledge or information as to the fact that AT&T towers do not support MMS, or any advice as to when the towers will support MMS;

g.      According to Apple's and AT&T's marketing research, is MMS functionality an important decision driver for residential consumers when buying iPhones;

h.      When will AT&T have finished its tower upgrade;

i.      Did any officials from AT&T or Apple believe that the advertisements to customers relating to MMS were misleading to consumers;

j.      What did Defendants tell their own managers and employees internally about MMS functionality;

k.      Were any committees or work groups created to solve the MMS problem, and what was said in their meetings;

l.      Why don't Apple and AT&T tell customers the truth about MMS when the customer is buying the product in the store; and

m.      Other fact questions.

**Legal Questions:**

a.      Did the Defendants engage in an unfair practice in connection with the sale or advertisement of merchandise when they represented to New York consumers that their iPhones would have MMS functionality;

b.      Did the Defendants employ any deception, fraud, false pretense, false promise, or misrepresentation, in connection with the sale or advertisement of merchandise under New York law, specifically New York's law on Consumer Protection from Deceptive Acts and Practices, when they represented to New York consumers that their iPhone would have MMS functionality;

c.      Did the Defendants employ any deception, fraud, false pretense, false promise, or misrepresentation, in connection with the sale or advertisement of merchandise under under New York law, specifically New York's law on Consumer Protection from Deceptive Acts and Practices, when they represented to New York consumers that the 3.0

11

Software Upgrade would allow their iPhones to have MMS functionality;

d.   Did the Defendants conceal, suppress or omit material facts when they failed to reveal to consumers that: (a) the towers of AT&T -- the exclusive phone network for the iPhone -- did not support MMS functionality; (b) AT&T would not have the towers upgraded from many months; and (c) the 3.0 software Upgrade would not, by itself, solve the problem;

e.   To what extent and in what amount were Plaintiffs and the Class damaged by Defendants' unlawful actions;

f.   Do the Defendants have affirmative defenses which are common to call class members; and

g.   Other legal questions

58.   Plaintiffs' claims are typical of the claims of the members of the Plaintiff Class; all of whom have purchased 3G and/or 3G-S iPhones between July 1, 2008 and the date of final judgment or settlement, and received similar representations about MMS on said iPhones.

59.   Plaintiffs are adequate representatives of the Plaintiff Class because they are members of the Plaintiff Class and their interests do not conflict with the interests of the members of the Plaintiff Class they seek to represent. Further, Plaintiffs are represented by experienced and able counsel who have litigated numerous other consumer fraud and mass tort class actions, and they intend to prosecute this action vigorously for the benefit of the entire Plaintiff Class. Plaintiffs and their counsel will fairly and adequately protect the interests of the members of the Plaintiff Class.

60.   A class action is superior to other available methods for the efficient adjudication of this litigation since individual litigation of Plaintiff Class members' claim is impractical. It would be unduly burdensome to the Courts in which individual litigation on the facts of thousands of cases would proceed. Further, individual litigation presents a potential for

inconsistent or contradictory judgments. Individual litigation increases the delay and expense to all parties and the Courts in resolving the complex legal and factual issues of these cases, and has the potential for inconsistent or contradictory judgments. By contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single Court. Additionally, notice of the pendency and/or resolution of this class action can be provided to Class members by direct mail, as upon information and belief, Defendants herein have kept detailed records as to the purchasers of all 3G and/or 3G-S iPhones, including the time period of June 2008 and thereafter.

### FIRST CAUSE OF ACTION
### AS AGAINST THE DEFENDANT
### (VIOLATION OF NEW YORK GENERAL BUSINESS LAW §§ 349 AND 350)

61.     Plaintiffs, RICK PINEDA and GERARD PADDEN, individually and on behalf of all others similarly situated, repeat, reiterate and reallage each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effects as if fully set forth herein.

62.     Defendants engaged in consumer-oriented, commercial conduct by selling, marketing and advertising the iPhone, including the 3G and 3G-S iPhones which are the subject of this lawsuit.

63.     Defendants misrepresented and omitted material information regarding the iPhone by failing to disclose information regarding its MMS functionalities and/or capabilities.

64.     Defendants' misrepresentations, concealment of material facts, and/or omissions constitute unconscionable commercial practices, deception, fraud, false pretenses, misrepresentation, and/or the knowing concealment, suppression, or omission of materials facts

with the intent that others rely on such concealment, suppression, or omission in connection with the sale and advertisement of the subject product, in violation of New York General Business Law ("GBL") §§ 349 and 350.

65.    New York has enacted statutes to protect consumers from deceptive, fraudulent, and unconscionable trade and business practices.   Defendants violated these statutes by knowingly and falsely representing that the subject product was fit to be used for the purpose for which it was intended, when Defendants knew it was defective and dangerous, and by other acts alleged herein.

66.    Defendants engaged in the deceptive acts and practices alleged herein in order to sell the subject product to the public, including Plaintiffs, and increase profit.

67.    As a direct and proximate result of Defendants' violations of GBL §§349 and 350 Plaintiffs, RICK PINEDA and GERARD PADDEN, and Plaintiff Class Members have suffered damages, for which they are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

68.    By reason of the foregoing, Plaintiffs and the Plaintiff Class have been damaged as against the Defendant in the sum of FIFTY MILLION DOLLARS ($50,000,000.00).

## SECOND CAUSE OF ACTION
## AS AGAINST THE DEFENDANT
## (FRAUDULENT CONCEALMENT)

69.    Plaintiffs, RICK PINEDA AND GERARD PADDEN, individually and on behalf of all others similarly situated, repeat, reiterate and reallege each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effects as if fully set forth herein.

70.    At all times during the course of dealing between Defendants and Plaintiffs and

14

Plaintiff Class members and/or the general public, Defendants misrepresented that 3G and 3G-S iPhones had MMS functionalities and/or capabilities.

71.     Defendants knew or were reckless in not knowing that their representations were false.

72.     In representations to Plaintiffs and Plaintiff Class members, as well as the general public, Defendants fraudulently concealed and intentionally omitted the fact that 3G and 3G-S iPhones do not have MMS functionalities and/or capabilities as marketed, advertised and promoted by Defendants.

73.     Defendants were under a duty to disclose to Plaintiffs and Plaintiff Class members and the general public, the defective nature of the 3G and 3G-S iPhones.

74.     Defendants had sole access to material facts concerning the defective nature of the 3G and 3G-S iPhones.

75.     Defendants' concealment and omissions of material facts concerning, inter alia, the MMS functionalities and/or of the 3G and 3G-S iPhones was done purposefully, willfully, wantonly, and/or recklessly, to mislead Plaintiffs and Plaintiff Class members, and the general public into reliance, continued use of the 3G and 3G-S iPhones, and actions thereon, and to cause them to purchase the product and/or use the product.

76.     Defendants knew that Plaintiffs and Plaintiff Class members, and/or the general public had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding the 3G and 3G-S iPhones, as set forth herein.

77.     Plaintiffs and Plaintiff Class members, and/or the general public relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were

15

concealed and/or omitted by Defendants.

78.     By reason of the foregoing, and as a direct and proximate result of Defendants' fraudulent concealment, Plaintiffs, RICK PINEDA and GERARD PADDEN, and all other Plaintiff Class members, and all others similarly situated, have suffered damages. Plaintiffs and the Plaintiff Class members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

79.     By reason of the foregoing, Plaintiffs and the Plaintiff Class have been damaged as against the Defendant in the sum of FIFTY MILLION DOLLARS ($50,000,000.00).

## THIRD CAUSE OF ACTION
## AS AGAINST THE DEFENDANT
## (FRAUDULENT MISREPRESENTATION)

80.     Plaintiffs, RICK PINEDA AND GERARD PADDEN, individually and on behalf of all others similarly situated, repeat, reiterate and reallage each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effects as if fully set forth herein.

81.     The Defendants falsely and fraudulently represented to the Plaintiffs and Plaintiff Class members, and/or the public in general, that said products, the 3G and 3G-S iPhones, had MMS functionalities and/or capabilities.

82.     That representations made by Defendants were, in fact, false.

83.     When said representations were made by Defendants, they knew those representations to be false and they willfully, wantonly and recklessly disregarded whether the representations were true.

84.     These representations were made by said Defendants with the intent of defrauding and deceiving the Plaintiffs and Plaintiff Class members, and the public in general, and were

made with the intent of inducing the public in general to purchase said products, the 3G and/or 3G-S iPhones, all of which evidenced a callous, reckless, willful, depraved indifference to the welfare of the Plaintiffs and Plaintiff Class members herein.

85.    At the time the aforesaid representations were made by the Defendants and, at the time the Plaintiffs and Plaintiff Class members purchased and/or used the 3G and 3G-S iPhones, the Plaintiffs and Plaintiff Class members were unaware of the falsity of said representations and reasonably believed them to be true.

86.    In reliance upon said representations, the Plaintiffs and Plaintiff Class members were induced to and did use the 3G and/or 3G-S iPhones, thereby sustaining damages.

87.    Said Defendants knew and were aware or should have been aware that the 3G and 3G-S iPhones were defective in nature, in that they did not have been MMS functionalities and/or capabilities.

88.    Defendants brought the 3G and 3G-S iPhones to the market, and acted fraudulently, wantonly and maliciously to the detriment of the Plaintiffs and Plaintiff Class members.

89.    By reason of the foregoing, and as a direct and proximate result of Defendants' fraudulent misrepresentations, Plaintiffs, RICK PINEDA AND GERARD PADDEN, and all other Plaintiff Class members, and all others similarly situated, have suffered damages. Plaintiffs and the Plaintiff Class members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

90.    By reason of the foregoing, Plaintiffs and the Plaintiff Class have been damaged as against the Defendant in the sum of FIFTY MILLION DOLLARS ($50,000,000.00).

17

## FOURTH CAUSE OF ACTION
## AS AGAINST THE DEFENDANT
## (NEGLIGENT MISREPRESENTATION)

91.     Plaintiffs, RICK PINEDA AND GERARD PADDEN, individually and on behalf of all others similarly situated, repeat, reiterate and reallage each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effects as if fully set forth herein.

92.     Defendants had a duty to represent to the Plaintiffs and Plaintiff Class members, and/or the public in general that said products, the 3G and/or 3G-S iPhones, did not have MMS functionalities and/or capabilities.

93.     The representations made by Defendants were, in fact, false.

94.     Defendants failed to exercise ordinary care in their representations regarding the MMS functionalities and/or capabilities of the 3G and/or 3G-S iPhones, while involved in their advertising, marketing, promoting and sale of said products.

95.     Defendant breached their duty in representing the MMS functionalities and/or capabilities of the 3G and/or 3G-S iPhones to the Plaintiffs and Plaintiff Class members and/or the public in general.

96.     By reason of the foregoing, and as a direct and proximate result of Defendants' negligent misrepresentation, Plaintiffs, RICK PINEDA and GERARD PADDEN, and all other Plaintiff Class members, and all others similarly situated, have suffered damages. Plaintiffs and the Plaintiff Class members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

97.     By reason of the foregoing, Plaintiffs and the Plaintiff Class have been damaged as against the Defendant in the sum of FIFTY MILLION DOLLARS ($50,000,000.00).

## FIFTH CAUSE OF ACTION
## AS AGAINST THE DEFENDANT
## (BREACH OF EXPRESS WARRANTY)

98.   Plaintiffs, RICK PINEDA AND GERARD PADDEN, individually and on behalf of all others similarly situated, repeat, reiterate and reallage each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effects as if fully set forth herein.

99.   Defendants expressly warranted that the 3G and/or 3G-S iPhones had MMS functionalities and/or capabilities.

100.   The 3G and/or 3G-S iPhones do not conform to these express representations because they do not have MMS functionalities and/or capabilities.

101.   Plaintiffs and Plaintiff Class members did rely on the express warranties of the Defendants herein.

102.   The Defendants herein breached the aforesaid express warranties, as their iPhones were defective.

103.   Defendants expressly represented to Plaintiffs and Plaintiff Class members, and/or the general public that the 3G and 3G-S iPhones were fit for use for the purposes intended.

104.   Defendants knew or should have known that, in fact, said representations and warranties were false, misleading and untrue in that the 3G and 3G-S iPhones were not fit for use for the purposes intended.

105.   By reason of the foregoing, and as a direct and proximate result of Defendants' breach of express warranty, Plaintiffs, RICK PINEDA AND GERARD PADDEN, and all other Plaintiff Class members, and all others similarly situated, have suffered damages. Plaintiffs and the Plaintiff Class members are entitled to compensatory damages, equitable and declaratory

19

relief, punitive damages, costs and reasonable attorneys' fees.

106.    By reason of the foregoing, Plaintiffs and the Plaintiff Class have been damaged as against the Defendant in the sum of FIFTY MILLION DOLLARS ($50,000,000.00).

**SIXTH CAUSE OF ACTION**
**AS AGAINST THE DEFENDANT**
**(BREACH OF IMPLIED WARRANTIES)**

107.    Plaintiffs, RICK PINEDA AND GERARD PADDEN, individually and on behalf of all others similarly situated, repeat, reiterate and reallage each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effects as if fully set forth herein.

108.    At all times herein mentioned, the Defendants advertised, promoted, marketed and sold the 3G and 3G-S iPhones as having MMS functionalities and/or capabilities.

109.    At the time Defendants advertised, promoted, marketed and sold the 3G and 3G-S iPhones as having MMS functionalities and/or capabilities for use by Plaintiffs and Plaintiff Class members, Defendant knew that Plaintiffs and Plaintiff Class members desired the 3G and 3G-S iPhones to have MMS functionalities and/or capabilities and impliedly warranted the product to be of merchantable quality and fit for such use.

110.    The Defendants impliedly represented and warranted to the users of the 3G and 3G-S iPhones that the 3G and 3G-S iPhones were of merchantable quality and fit for the purpose for which said product was to be purchased.

111.    That said representations and warranties aforementioned were false, misleading, and inaccurate in that the 3G and 3G-S iPhones were not of merchantable quality and defective.

112.    Plaintiffs and Plaintiff Class members did rely on said implied warranty of

20

merchantability of fitness for a particular use and purpose.

113.    Plaintiffs and Plaintiff Class members reasonably relied upon the skill and judgment of Defendants as to whether the 3G and 3G-S iPhones were of merchantable quality and safe and fit for their intended use.

114.    The leads were injected into the stream of commerce by the Defendants in a defective condition and the products and materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

115.    The Defendant herein breached the aforesaid implied warranties, as their 3G and 3G-S iPhones were not fit for their intended purposes and uses.

116.    By reason of the foregoing, and as a direct and proximate result of Defendants' breach of implied warranty, Plaintiffs, RICK PINEDA AND GERARD PADDEN, and all other Plaintiff Class members, and all others similarly situated, have suffered damages. Plaintiffs and the Plaintiff Class members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

117.    By reason of the foregoing, Plaintiffs and the Plaintiff Class have been damaged as against the Defendant in the sum of FIFTY MILLION DOLLARS ($50,000,000.00).

<u>**SEVENTH CAUSE OF ACTION**</u>
<u>**AS AGAINST THE DEFENDANT**</u>
<u>**(UNJUST ENRICHMENT/RESTITUTION)**</u>

118.    Plaintiffs, RICK PINEDA AND GERARD PADDEN, individually and on behalf of all others similarly situated, repeat, reiterate and reallage each and every allegation of this Complaint in each of the foregoing paragraphs inclusive, with the same force and effects as if

fully set forth herein.

119.  As stated with more particularity herein, Defendants, at the time they created, designed, manufactured and/or sold the 3G and/or 3G-S iPhones to the citizens and/or residents of New York, embarked on and carried out a common scheme of falsely and deceptively representing that the iPhone possessed MMS functionalities and/or capabilities.

120.  Defendants' practices resulted in Plaintiffs and Plaintiff Class members purchasing 3G and/or 3G-S iPhones in order to receive said MMS functionalities and/or capabilities.

121.  As a result, the Defendants have been enriched from the selling and manufacturing of a defective product and the Plaintiffs and the Plaintiff Class members have been correspondingly impoverished by purchasing or paying for the defective product.

122.  The monies paid by Plaintiffs and Plaintiff Class members to Defendants in the purchase of 3G and/or 3G-S iPhones conferred substantial benefits upon Defendants. Defendants knew of and appreciated the benefits conferred upon them by Plaintiffs and the Plaintiff Class members and accepted and retained these benefits, which, injustice and fairness, should be refunded and paid over to Plaintiffs and members of the Class, in an amount to be proved at trial but not less than $5,000,000.00, not including interest or costs.

123.  It would be inequitable for Defendants to retain the money collected from Plaintiffs and Plaintiff Class members, in light of their unconscionable acts and practices. There was and/or is no justification or cause for Defendants' enrichment or Plaintiffs' and the Plaintiff Class members' resulting impoverishment.

124.  Plaintiffs demand that Apple Inc, and AT&T Mobility, LLC return all such monies acquired from Plaintiffs and the Class through the selling of the 3G and 3G-S iPhones

125.    By reason of the foregoing, and as a direct and proximate result of Defendants' fraudulent concealment, Plaintiffs, RICK PINEDA AND GERARD PADDEN, and all other Plaintiff Class members, and all others similarly situated, have suffered damages. Plaintiffs and the Plaintiff Class members are entitled to compensatory damages, equitable and declaratory relief, punitive damages, costs and reasonable attorneys' fees.

126.    By reason of the foregoing, Plaintiffs and the Plaintiff Class have been damaged as against the Defendant in the sum of FIFTY MILLION DOLLARS ($50,000,000.00).

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment as requested above against Defendant and further prays for:

(a) An order certifying the Class proposed herein and appointing Plaintiffs and their counsel to represent the Class;

(b) An order directing that appropriate notice to Class members be delivered;

(c) Restitution to Plaintiffs and the Class as provided by law;

(d) Disgorgement of all monies unjustly received through Defendant's unlawful conduct  together with interest;

(e) Declaration that the actions and/or omissions of Defendant as described herein are unlawful, illegal, and in violation of New York law as set forth herein;

(f) A permanent injunction against Defendant forbidding them from hereinafter undertaking the unlawful actions and/or omissions described herein;

(g) Actual damages;

(h) Exemplary or punitive damages as provided by law;

(i) Statutory prejudgment interest;

23

(j)  Reasonable attorneys' fees and the costs of this action;

(k) Legal and equitable relief under the causes of action stated herein; and

(l)  Such other relief as this Court may deem just and proper.

Dated: New York, New York
        January 11, 2008

DOUGLAS & LONDON, P.C.

By:
MICHAEL A. LONDON (ML-7510)
VIRGINIA E. ANELLO (VA-8197)
111 John Street, Suite 1400
New York, New York  10038
Ph:  (212) 566-7500
Fax: (212) 566-7501
Email: mlondon@douglasandlondon.com
Email: vanello@douglasandlondon.com

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury as to all issues

MICHAEL A. LONDON (ML-7510)